# EXHIBIT A

Case 1:17-cv-04792-KBF   Document 1-1   Filed 06/23/17   Page 2 of 27

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK**

-----------------------------------------------------------------x

ASHER B. EDELMAN, as Executor of the Estate of     :
Mildred Ash,

                  Plaintiff,          :       **SUMMONS**

      -against-               :       **Index No.**

REMKO SPOELSTRA,                 :

             Defendant.       :

-----------------------------------------------------------------x

TO THE ABOVE NAMED DEFENDANT:

You are hereby summoned to answer the Complaint in this action and to serve a copy of your answer to the plaintiff's attorneys within twenty (20) days after the service of this Summons, exclusive of the day of service, or within thirty (30) days after completion of service where service is made in any other manner than by personal delivery within the State.

In case of your failure to appear or answer, JUDGMENT will be taken against you by default for the relief demanded in the Complaint.

The basis for the venue is that certain activities complained of herein occurred in whole or in part in the State of New York, County of New York.

Dated: New York, New York
       May 24, 2017

                          FRANZINO & SCHER, LLC

                By _____
                      Frank J. Franzino, Jr.
                      Attorneys for Plaintiff
                      900 Third Avenue, 17th Floor
                      New York, New York 10022
                      (212) 230-1140

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

------------------------------------------------------------x

ASHER B. EDELMAN, as Executor of the Estate of
Mildred Ash,                                         :

                          Plaintiff,                 :        COMPLAINT

          -against-                                  :        Index No.

REMKO SPOELSTRA,                                     :

                          Defendant.                 :

------------------------------------------------------------x

       Plaintiff Asher B. Edelman, as Executor of the Estate of Mildred Ash ("Edelman as Executor") by his attorneys, Franzino & Scher LLC, as and for his Complaint against defendant Remko Spoelstra ("Spoelstra") alleges:

1.  Edelman as Executor is the Executor of the Estate of Mildred Ash (the "Ash Estate") with an address at135 East 15th Street, New York, New York 10003.

2.  Upon information and belief, Spoelstra is an individual with a place of business at Komeetweg 5-7 (street), 2516AV Den Haag, The Netherlands.

3.  Spoelstra informed Edelman as Executor that he could have a painting by Edvard Munch (the "Munch") brought to New York which he would then be able to show to potential buyers if a $400,000 refundable deposit was paid by Spoelstra to the owner.

4.  Spoelstra advised Edelman as Executor that if the owner requested that the Munch be returned, the $400,000 would be returned to Spoelstra.

5.  Further, if Spoelstra was successful in selling the Munch, the $400,000 deposit would also be returned from proceeds of the sale.

6.  In order to pay the $400,000, Spoelstra requested a loan of $200,000 from the Ash Estate.

1

7. On or about October 21, 2016, a Loan Agreement, Security Agreement and Secured Promissory Note were negotiated by and between the Ash Estate and Spoelstra.

8. The Loan Agreement, Security Agreement and Secured Promissory Note were all executed on or about November 7, 2016. A copy of the Loan Agreement is attached hereto as Exhibit "A". A copy of the Security Agreement is attached hereto as Exhibit "B". A copy of the Secured Promissory Note is attached hereto as Exhibit "C".

9. As security for the loan, the Ash Estate was given a first priority security interest in and first lien upon Spoelstra's right, title and interest to the Munch, as evidenced in Schedule 1 attached to the Loan Agreement and attached again hereto as Exhibit "D".

10. The Ash Estate was also given possession of the Munch on or about November 14, 2016.

11. The Loan Agreement refers to a loan of $206,000. However, only $131,000 was actually transferred to Spoelstra.

12. Spoelstra received $125,000 plus the agreed upon Origination Fee of $2,000 and Prepaid Interest of $4,000 for a total of $131,000.

13. The Interest on the Loan Agreement is $16,000 per annum.

14. Upon information and belief, on or about December 2, 2016, the Munch was sold to the Swiss Business Council of Abu Dhabi ("SBC") by Spoelstra. A copy of that invoice is attached hereto as Exhibit "E".

15. Upon information and belief, SBC is non-profit organization, licensed by the United Arab Emirates Chambers of Commerce & Industry with offices located at Corniche Road, Baynounah Tower 2, 3rd Floor, Office No. 10, Abu Dhabi, UAE.

16. Upon information and belief, SBC purchased the Munch through the auspices of Mohammed bin Zayed Ainahyan and his staff.

2

Case 1:17-cv-04792-KBF   Document 1-1   Filed 06/23/17   Page 5 of 27

17.   In or about January 2017, the Ash Estate became aware that Spoelstra had falsely represented his interest in the Munch. Spoelstra had no interest in the Munch. The Ash Estate also became aware that Spoelstra did not pay the $400,000 deposit to the owner of the Munch.

18.   Pursuant to Paragraph 4(a)(vi) of both the Loan Agreement and the Secured Promissory Note, an Event of Default occurs when "the Property [the Munch Painting] shall cease to be subject to Lender's continuing security interest of first priority in and first lien upon all of Borrower's right, title, and interest in and to the Property [the Munch Painting] and the proceeds thereof, insurance proceeds and products thereof, additions and accessions thereto and any accounts receivable arising therefrom."

19.   As a result of the owner of the Munch informing the Ash Estate about Spoelstra's having no right, title or interest in the Munch, an Event of Default had occurred.

20.   On or about January 20, 2017, the Ash Estate sent a default letter to Spoelstra.  A copy of the default letter is attached hereto as Exhibit "F".

21.   Currently, Edelman as Executor has been contacted by the representative of the owner of the Munch who has demanded that the Munch be returned.

22.   Upon information and belief, Spoelstra had no rights to the painting and fraudulently signed the Security Agreement.

### AS AND FOR A FIRST CAUSE OF ACTION

23.   Defendant has defaulted pursuant to the terms of the Loan Agreement and Secured Promissory Note as set forth in paragraph 18 above.

24.   Upon notice that Spoelstra did not have the interest that he claimed to have in the Munch, the Ash Estate declared a default and sent a default letter.

25. Pursuant to the Secured Promissory Note, when an Event of Default occurred, all monies owed pursuant to the Loan Agreement were immediately due and owing.

26. Defendant has not cured said default nor has he paid back to the Ash Estate the $131,000 loan, or any part thereof, although duly demanded.

27. By reason of defendant's breaches, the Ash Estate has incurred and will incur expenses and attorney's fees, in an amount to be demonstrated at trial.

WHEREFORE plaintiff Asher B. Edelman as Executor of the Estate of Mildred Ash demands judgment against defendant as follows:

(a) On the First Cause of Action, $131,000 plus interest, costs, expenses, and attorneys' fees; and

(b) Such other and further relief as the Court deems just and proper.

Dated: New York, New York
      May 24, 2017

FRANZINO & SCHER, LLC


By _____
     Frank J. Franzino, Jr.
     *Attorneys for Plaintiff*
     900 Third Avenue, 17th Floor
     New York, New York 10022
     (212) 230-1140

4

## LOAN AGREEMENT

As of October 21, 2016

Remko Spoelstra
Riand Investments
Komeetweg 5-7 (street)
2516AV Den Haag
The Netherlands
T: +31 6-24458407
remko@riandinvestments.com

This Loan Agreement confirms the terms and conditions pursuant to which The Estate of Mildred Ash, 135 East 15th Street New York New York 10003 ("*Lender*") will make a loan on October 21, 2016, to Remko Spoelstra, in the principal amount of Two Hundred and Six Thousand Dollars (US$206,000) secured by the consignment and the possession by Lender of the property listed on Schedule 1 attached hereto (the "*Property*").

1.    **The Loan.**

(a)    Subject to the next succeeding sentence, on the day following the fulfillment of all of the conditions precedent provided in paragraph 2 below, Lender will make a loan to you in the principal amount of Two Hundred Thousand Dollars (US$200,000) (the "*Loan*"). The Loan will be disbursed in accordance with the flow of funds set forth on Schedule 2 attached hereto.

(b)    The Loan will be evidenced by a Secured Promissory Note in the form attached hereto as Exhibit A (the "*Note*") and will be repayable by you to Lender at its address set forth above or at such other address designated in writing to you by Lender on the earlier of (i) the sale of the property, (ii) the end of the consignment agreement or (iii) upon the occurrence of an Event of Default (as defined in the Note).

(c)    All of your obligations under the Note will be secured by a Security Agreement in the form attached hereto as Exhibit B pursuant to which you will pledge to Lender all of your right, title

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003

and interest in and to the Property (the "*Security Agreement*"). You agree that Lender may file on behalf of Lender any appropriate document in the appropriate jurisdiction as a financing statement against the Property. In addition, you agree to execute and deliver to Lender upon its reasonable request, any financing statements, as well as extensions, renewals and amendments thereof, in such form as Lender may require to perfect a security interest on behalf of Lender with respect to the Property.

     (d)    Accrued and unpaid interest will be payable on the same date on which the Loan is due and payable and will accrue on the principal amount of the Loan at a rate equal to Sixteen Thousand Dollars (US$16,000) per annum from the date the proceeds of the Loan are made available to you until repayment in full to Lender. Notwithstanding the foregoing, interest for the three (3) first months of the loan in the amount of Four Thousand Dollars (US$ 4,000) (the "*Prepaid Interest*") will be deducted from the principal amount of the Loan advanced to you and such amount will be deemed fully earned and non-refundable, regardless of whether the Loan is repaid in whole or in part prior to the end of the first three months. The interests will then be billed quarterly.

     (e)    In partial consideration for extending the Loan, you will pay ArtAssure Ltd a fee equal to Two Thousand Dollars (US$2,000) (the "*Origination Fee*"), with such amount to be deducted from the principal amount of the Loan advanced to you.

     (f)    You authorize Lender to deduct the following amounts from the principal amount of the Loan advanced to you on the disbursement date: (i) the Prepaid Interest and (ii) the Origination Fee. You acknowledge that all such interest, fees and expenses are non-refundable under any and all circumstances.

     (g)    Repayment of the Loan to Lender: Lender will not be subject to any defenses, setoffs or counterclaims of any kind whatsoever. Your obligation to repay the Loan and accrued interest thereon is absolute and unconditional and is not subject to the results of the sale of the Property or any other event. If any deduction or withholding is required by law, then you will pay Lender such additional amount so that the net amount received by Lender will equal the full amount which would have been received had no such deduction or withholding been made.

     (h)    You agree that the commissions from the sale of any of the works in the Property shall first go towards repayment of the loan.

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003

2.     **Conditions Precedent to the Loan**.

Lender's obligation to make the Loan is subject to the prior fulfillment of each of the following conditions:

(a)     this Loan Agreement, the Note and the Security Agreement shall have been signed by you, notarized and delivered to Lender, as agent for Lender;

(b)     each of your representations and warranties in this Loan Agreement and in any other agreements between you and Lender shall be true and correct as if made on and as of the date of the disbursement of the Loan;

(c)     you shall not be in default or breach of any of the covenants or obligations contained in this Loan Agreement or in any other agreements between you and Lender;

(d)     if Lender, the Lender, deems it necessary, financing statements relating to the security granted in the Property shall have been duly recorded or filed in such manner and in such places as is required by law to establish, preserve, protect and perfect the security interests and rights created or intended to be created by the Security Agreement in the Property;

(e)     Lender, as Lender, shall have received a copy of a government-issued identification from you indicating your true name and permanent address.

3.     **Events of Default; Remedies**.

(a)     Each of the following shall constitute an "*Event of Default*" under the Note:

(i)     you shall default in the payment of any principal or interest on the Loan or any other amount payable by you to Lender pursuant to this Loan Agreement or any other agreement between you and Lender as and when the same shall become due and payable;

(ii)    any representation or warranty made by you herein or in any other agreement between you and Lender shall be incorrect, false or misleading in any respect;

(iii)   you shall breach, or fail to perform when due, any agreement, covenant or obligation to be performed by you as set forth herein or pursuant to the Note, the Security Agreement, the Agency Agreement or any other agreement between you and Lender;

(iv)    you shall file a petition seeking relief, or a case or proceeding shall have been commenced against you seeking a decree or order under title 11 of the United

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003



States Code, as now constituted or hereafter amended, or any other applicable federal, state or foreign bankruptcy or other similar law, or you shall consent to the institution of proceedings thereunder or to the filing of any such petition or to the appointment of or taking possession by a custodian, receiver, liquidator, assignee, trustee or sequestrator (or similar official) of any substantial part your assets;

(v)    the Property shall cease to be subject to Lender's continuing security interest of first priority in and first lien upon all of your right, title and interest in and to the Property and the proceeds thereof, insurance proceeds and products thereof, additions and accessions thereto and any accounts receivable arising therefrom; and/or

(vi)    there shall be any levy, seizure, attachment or execution upon the Property.

(b)    Upon the occurrence of an Event of Default at any time, the outstanding principal amount of the Loan, together with accrued but unpaid interest thereon, and all other outstanding indebtedness and obligations of you to Lender, shall become immediately due and payable, and you shall immediately reimburse Lender, (in addition to any other damages or monies to which Lender may be entitled) for all of Lender' expenses incurred in connection with this Loan Agreement. In addition, Lender shall have all of the rights, powers and privileges of a secured party under the New York Uniform Commercial Code as in effect from time to time, as well as any other rights or remedies otherwise available to Lender at law, in equity, hereunder or under the Note or the Security Agreement, all of which shall be cumulative to the extent permitted by law. Lender may enforce any of Lender's rights and remedies as a secured party directly for and on Lender's own behalf or through its agents or representatives. In addition to the rights and remedies provided in the Note and the Security Agreement, following an Event of Default, Lender may at any time or times, sell, resell, lease, assign and deliver, grant options for or otherwise dispose of any or all of the Property in its then condition or following any restoration or preparation, at public or private sales or proceedings, by one or more contracts, in one or more parcels, at the same or different times, at any place, upon any terms, and to such persons, firms or corporations as Lender, as Lender, deems best. In the event that any such disposition is the sale of the Property at a public auction, the Property shall be sold on the terms set forth in the auctioneers standard printed Consignment Agreement and subject to the

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003

Terms of Guarantee and the Conditions of Sale in effect at the time and place of such auction. You agree that in such event Lender shall set the reserves and estimates for the Property in its sole discretion. You further agree that if the Property is sold at auction for any currency other than US Dollars, the proceeds of the sale shall be converted to US Dollars on the settlement date of each sale by reference to the spot rate quoted by the principal office of a commercial bank selected by Lender at the place of the auction at the close of business on the business day immediately preceding the date on which Lender is to apply such proceeds on behalf of Lender.

4.     **Covenants, Representations and Warranties; Indemnity**.

(a)     As a material inducement to cause Lender to enter into this Loan Agreement and extend the Loan, you represent and warrant to Lender that:

(i)     the execution and delivery of this Loan Agreement by you and the consummation of the transactions contemplated herein, (A) do not and will not violate the provisions of any agreement, instrument or other document to which you are a party or by which you or the Property are bound or affected, nor any order or judgment of a court or governmental agency, and (B) will not give rise to any lien, security interest, encumbrance, claim or restriction against the Property other than as granted to Lender pursuant to the Security Agreement; and

(ii)     you have duly and validly executed this Loan Agreement, no other action is necessary to authorize consummation of the contemplated transactions and no consent of any third party, including, without limitation, any governmental agency or authority, is necessary or required in connection with your execution, delivery and performance of this Loan Agreement.

(b)     You agree to indemnify, defend and hold each of Lender and its respective agents, affiliates, assignees, successors and assigns harmless from and against any and all claims, actions, damages, losses, liabilities and expenses relating to: (i) any inaccuracy in or the breach or alleged breach of any of your obligations, representations or warranties in this Loan Agreement or any instrument delivered by you or on your behalf pursuant to this Loan Agreement, (ii) the Property, or (iii) your or your affiliates' obligations existing or arising on or prior to the termination of the

transactions contemplated herein, including, but not limited to, any costs, attorneys' fees, collection agency fees, amounts paid in settlement and expenses incurred by Lender in connection with collection of any amounts owed by you to Lender pursuant to this Loan Agreement.

(c)    All of your representations, warranties, covenants and indemnities herein shall expressly survive the advance and repayment of the Loan.

(d)    Except as otherwise expressly provided in this Loan Agreement, you will not, without the prior written consent of Lender, sell, offer, exchange, loan, assign, pledge, transfer, encumber or otherwise dispose of or agree to dispose of the Property.

5. **Insurance; Limitation of Liability**

(a)  Throughout the period of the Loan, Borrower will maintain insurance on the Property in an amount not less than Three Million Dollars (US$5,500,000).

6.    **Amendment**. No provision of this Loan Agreement may be amended, supplemented or waived other than by means of a writing signed by you and an authorized officer of Lender.

7.    **Privacy**. Each party will record any information supplied to it by, or obtained regarding, the other party in its data systems and such information will be kept confidential.  If either party is required to disclose any confidential information by applicable law, regulation, or legal or regulatory process, it will promptly notify the other in writing, if practicable and permitted by law, to provide such party the opportunity to seek a protective order or similar confidentiality treatment therefor, and shall disclose only that portion of such information which it is advised by counsel is legally required to be disclosed.

8.    **Assignment**.  Lender will have the right to assign this Loan Agreement, the Note and the Security Agreement, and all of its rights and obligations hereunder and thereunder, at any time and from time to time upon written notice to you. Upon an assignment of this Loan Agreement, the Note and the Security Agreement, Lender will not have any further obligations to you hereunder or thereunder.

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003

FILED: NEW YORK COUNTY CLERK 05/25/2017 11:48 AM
NYSCEF DOC. NO.

INDEX NO. 154826/2017
RECEIVED NYSCEF: 05/25/2017

Case 1:17-cv-04792-KBF   Document 1-1   Filed 06/23/17   Page 13 of 27

9. **Attorneys' Fees**.   You agree to pay to Lender, upon demand, all attorneys' fees, including fees incurred pursuant to any bankruptcy or insolvency proceeding, and all other costs and expenses which may be incurred by Lender in connection with the enforcement of this Loan Agreement, the Note, the Security Agreement and/or the Agency Agreement or in any way arising out of or relating to the protection, assertion or enforcement of Lender's rights under this Loan Agreement, the Note, the Security Agreement and/or the Agency Agreement, whether or not suit is brought.

10.   **Miscellaneous**. This Loan Agreement, together with the Note, the Security Agreement and the Agency Agreement, constitutes the entire agreement and understanding between you and Lender with respect to the transactions contemplated hereby and supersedes all prior agreements relating to the Property. This Loan Agreement shall be governed by and construed in accordance with the laws of the State of New York without regard to principles regarding the choice of law. In the event of any dispute hereunder, (a) the parties hereby consent to the exclusive jurisdiction of the courts of the State of New York and Federal courts of the United States of America located in the Southern District of New York, and (b) neither party shall be liable to the other for any special, consequential or incidental damages. YOU IRREVOCABLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS LOAN AGREEMENT, THE NOTE, THE SECURITY AGREEMENT AND/OR THE AGENCY AGREEMENT OR THE TRANSACTION CONTEMPLATED HEREBY OR THEREBY. This Loan Agreement shall be binding upon your heirs, distributees, executors and legal representatives assigns and shall inure to the benefit of the successors and assigns of Lender.

*[Balance of page intentionally left blank; signature page to follow.]*

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003

The parties agree to the foregoing provisions of this Loan Agreement by signing in the space provided below.

_____     Rome, nov 7th

Remko Spoelstra
in his individual capacity

ACKNOWLEDGED AND AGREED:

THE ESTATE OF MILDRED ASH

By _____

Asher Edelman, as Executor

THE ESTATE OF MILDRED ASH
135 EAST 15TH STREET NEW YORK NY 10003

Schedule 1

**Property**

**Edvard Munch**
*Badende Gutter (Bathing Boys, The Lonely One)*
1904-05
Oil on canvas
57.4 x 68.5 cm
Signed lower right "E. Munch"

**The Property is to be in the possession of The
Estate until the Loan is repaid in full.**



Schedule 2

**Flow of Funds**

| Loan Amount | US$ 206,000 | |
|---|---|---|
| Prepaid Interest | US$ 4,000 | |
| Origination Fee | US$ 2,000 | |
| Total Disbursement Amount to Borrower | US$200,000 | |

**Schedule of payment:**

-$25,000 to be sent to Laura Germak's account on October 21, 2016

-$175,000 to be wired within the receipt of the Property to the Estate's premises.

## SECURITY AGREEMENT

SECURITY AGREEMENT dated as of October 21, 2016 by and between The Estate of Mildred Ash, located at 135 East 15th Street, New York, New York 10003 (*"Lender"*), and REMKO SPOELSTRA, at Riand Investments, Komeetweg 5-7, 2516AV Den Haag, The Netherlands (*"Borrower"*).

W I T N E S S E T H:

A.      Expressly subject to execution and delivery of this Security Agreement by Borrower, Lender is willing to make a loan to Borrower in the aggregate principal amount of Two Hundred and Six Thousand Dollars (US$206,000) pursuant to the terms of the Secured Promissory Note of even date herewith issued by Borrower in favor of Lender (the *"Note"*), and the Loan Agreement of even date herewith between Borrower and Lender (the *"Loan Agreement"*).

B.      In order to induce Lender to advance the loan to Borrower, Borrower agrees as follows:

1.      **Grant of Security.**   For the consideration recited above and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Borrower hereby grants to Lender a first priority security interest in, and continuing first lien upon, and a right of set off against, all of Borrower's right, title and interest in and to all of the artwork of Borrower listed on Schedule A attached hereto (the *"Property"*). Borrower hereby grants to Lender possession and consignment of the Property until the Loan is repaid in full.  The appraised value of the Property reflected on Schedule A is a reasonable estimate of the current value based on recent appraisals from reputable commercial art appraisers. Borrower is the agent for the sale of the Property and represents that there are no security interests, liens or encumbrances of any kind affecting the Property.

2.      **Security of Obligations**. This Security Agreement secures the payment and performance of all obligations of Borrower now or hereafter existing under the Note and/or the Loan Agreement, whether for principal, interest, fees, expenses or otherwise, and all obligations of Borrower now or hereafter existing under this Security Agreement (collectively, the *"Obligations"*).

3.      **Insurance**. Art Assure Ltd. LLC (*"ArtAssure"*), as agent for lender, will, at its own cost and expense, and for so long as Lender shall be entitled to a security interest in the Property, maintain insurance with respect to the Property with Lender as the additional insured, as its interest may appear pursuant to a "Lender Loss Payable Clause" endorsed thereon, against loss or damage by fire or other hazards with such insurance companies and in an amount not less than Five Million and Five Hundred Thousand Dollars (US5,550,000) (all such policies providing not less than twenty (20) days' prior written notice of cancellation to Lender).



4.     **Further Assurances**. Borrower agrees that from time to time, at the expense of Borrower, he will promptly execute and deliver all further instruments and documents, and take all further actions that may be necessary or desirable, or that Lender and/or ArtAssure as agent for Lender, may request, in order to perfect and protect the security interest granted hereby or to enable Lender to exercise and enforce its rights and remedies hereunder with respect to the Property. Borrower hereby authorizes Lender and/or ArtAssure, as agent for Lender, to file one or more financing or continuation statements, and amendments thereto, relative to all or any part of the Property without the signature of Borrower where permitted by law. Borrower further authorizes Lender and/or ArtAssure, as agent for Lender, to have the sole right to make any insurance adjustments or settle any claims made with respect to the Property.

5.     **Lender's Duties**. The powers conferred on Lender hereunder are solely to protect its interest in the Property and not to impose any duty upon it to exercise any such powers. Lender shall not be required to take any action of any kind to collect, preserve, conserve, restore or protect the Property or its or Borrower's rights in the Property.

6.     **Remedies**. In an Event of Default (as such term is defined in the Note) shall have occurred and be continuing:

(a)     Lender and/or ArtAssure, as agent for Lender, may at any time or times, exercise in respect of the Property, in addition to other rights and remedies provided for herein or otherwise available to it, all of the rights and remedies of a secured party under the Uniform Commercial Code as adopted in the State of New York (the "*UCC*") (whether or not the UCC applies to the affected Property).

(b)     All cash proceeds received by Lender and/or ArtAssure, as agent for Lender, in respect of any sale of, collection from, or other realization upon all or part of the Property may, in the sole discretion of Lender, be held by Lender and/or ArtAssure, as agent for Lender, as Property for, and/or then or at any time thereafter applied (after payment of any amounts payable to Lender pursuant to Section 7) in whole or in part by Lender and/or ArtAssure, as agent for Lender, against, all or any part of the Obligations in such order as Lender and/or ArtAssure, as agent for Lender, shall elect. Any surplus of such cash or cash proceeds held by Lender and/or ArtAssure, as agent for Lender, and remaining after payment in full of all of the Obligations shall be paid over to Borrower or to whomsoever may be lawfully entitled to receive such surplus.

(c)     The rights, remedies and benefits of Lender herein specified are cumulative and not exclusive of any other rights, remedies or benefits which Lender may have under this Security Agreement, the Note or any related agreement, or at law, in equity, by statute or otherwise. Borrower hereby expressly agrees that Lender shall not be required to exercise any particular rights, powers, remedies or benefits under this Security Agreement or to realize or attempt to realize on any security for any or all of the Obligations.



7.  **Indemnity and Expenses**.

(a)  Borrower agrees to indemnify, defend and hold harmless Lender and/or ArtAssure, as agent for Lender, from and against any and all claims, losses and liabilities arising or resulting from this Security Agreement (including, without limitation, enforcement of this Security Agreement).

(b)  Borrower shall, upon demand, pay to Lender and/or ArtAssure, as agent for Lender, the amount of any and all expenses, including the fees and disbursements of counsel for Lender and/or ArtAssure and of any experts and agents, which Lender and/or ArtAssure, as agent for Lender, may incur in connection with the (i) the administration of this Security Agreement, (ii) the custody, preservation and/or sale of the Property or Lender's realization upon any of its rights hereunder, or (iii) the failure by Borrower to perform or observe any of the provisions hereof.

8.  **Modifications, Amendments**. No modification, amendment, or waiver of any provision of this Security Agreement nor consent to any departure by Borrower from the terms hereof shall in any event be effective unless the same shall be in writing and signed by Lender, and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

9.  **No Delay, Waiver, Etc**.  No course of dealing between Borrower and Lender, nor any delay on the part of Lender in exercising any power or right hereunder, shall operate as a waiver thereof nor shall any single or partial exercise of any power or right hereunder preclude any other or further exercise thereof or the exercise of any other power or right.

10.  **Address for Notices**. All notices required or permitted to be given hereunder shall be in writing and shall be deemed to have been given when received if delivered in person or three (3) business days following the mailing thereof if mailed by certified first class mail, postage prepaid, return receipt requested, or by established international courier to the respective addresses of the parties set forth above.

11.  **Continuing Security Interest; Transfer of Secured Promissory Note**. This Security Agreement shall create a continuing security interest in the Property and shall (i) remain in full force and effect until payment in full of the Obligations, (ii) be binding upon Borrower and his heirs, executors and administrators, and (iii) inure to the benefit of Lender and its successors, transferees and assigns. Upon payment in full of the Obligations, the security interest shall revert to Borrower. Upon any such termination, Lender will, at Borrower's cost and expense, execute and deliver to Borrower such documents as Borrower shall reasonably request to evidence such termination.

12.  **Governing Law; Service of Process**. This Security Agreement shall be governed by and construed in accordance with the law of the State of New York without regard to its principles of conflicts of law.  Borrower and Lender hereby irrevocably submit to the jurisdiction of the Supreme Court of the State of New York, New York County and, if applicable, the Federal courts of the United States of America located in the Southern District



of New York, in connection with any suit, action or proceeding arising out of or relating to this Security Agreement. In any such litigation, Borrower waives personal service of any summons, complaint or other process and agrees that the service thereof may be made by certified mail, return receipt requested, directed to Borrower at his address listed above.

13.  **Waiver of Jury Trial and Set-off**. Borrower irrevocably waives any right to trial by jury in any litigation in any court in connection with any of the transactions arising out of this Security Agreement, the Note and/or the Loan Agreement. Borrower waives the right to interpose any set-off or counterclaim or cross-claim in connection with any such litigation, irrespective of the nature of such set-off, counterclaim or cross-claim.

14.  **Severability**. If any part or provision of this Security Agreement is invalid, illegal or unenforceable in any respect, such part or provision shall be severable without affecting the validity, legality or enforceability of any other part or provision of this Security Agreement.

15.  **Counterparts**. This Security Agreement may be executed in counterparts, each of which shall be deemed to be an original.

_____        Rome, Nov 7th
Remko Spoelstra
in his individual capacity


_____
The Estate of Mildred Ash
Asher Edelman as Executor


ACKNOWLEDGED AND AGREED:

ART ASSURE, LTD. LLC

By: _____
Asher Edelman
Manager

**SECURED PROMISSORY NOTE**

US$206,000

**New York, New York**
**As of October 21, 2016**

FOR VALUE RECEIVED, the adequacy and receipt of which is hereby acknowledged, the undersigned, REMKO SPOELSTRA, with offices at Riand Investmenst, Komeetweg 5-7, 2516AV Den Haag, The Netherlands ("*Borrower*"), hereby promises to pay to the order of The Estate of Mildred Ash, located at 135 East 15th Street, New York, New York 10003 ("*Lender*"), and/or its assigns, the principal sum of Two Hundred and Six Thousand Dollars (US$206,000) (the "*Principal Amount*"), together with interest from the date of this Secured Promissory Note on the unpaid Principal Amount at a rate equal to Sixteen Thousand Dollars (US$16,000) per annum ("*Interest*"). The Principal Amount and accrued unpaid Interest shall be due and payable on the earlier of (i) the sale of the property, (ii) the end of the consignment agreement or (iii) an event of default (the "*Maturity Date*"). The loan evidenced by this Secured Promissory Note is being made by Lender pursuant to and in reliance upon a Loan Agreement between Borrower and Lender dated as of the date hereof (the "*Loan Agreement*").

Payments of the Principal Amount and Interest due hereunder shall be governed by the following provisions:

1.      **Payments**.

(a)    The Principal Amount and all accrued, unpaid Interest shall be payable in full to Lender on the Maturity Date without further demand or offset. Notwithstanding the foregoing, Borrower shall pay to Lender the sum of Four Thousand Dollars (US$4,000) representing an advance payment of all Interest on the Principal Amount for the period from October 21, 2016 through and including January 20, 2016. Such prepayment of Interest shall be paid by Borrower simultaneous with the making of the loan evidenced by this Secured Promissory Note, with such amount to be deducted from the Principal Amount advanced to Borrower. Borrower acknowledges that such prepaid Interest amount is non-refundable under any and all circumstances and shall be deemed fully earned and non-refundable to Borrower effective upon receipt by Lender.

(b)    In partial consideration for extending the loan hereunder, Borrower shall pay to ArtAssure Ltd a limited company established and existing under the laws of the State of Delaware and acting as agent for Lender ("*ArtAssure*") the sum of Two Thousand Dollars (US$2,000) (the "*Origination Fee*"). The Origination Fee shall be paid by Borrower to ArtAssure simultaneous with the making of the loan evidenced by this Secured Promissory Note, with such amount to be deducted from the Principal Amount advanced to Borrower. Borrower acknowledges that the Origination Fee is non-refundable under any and all circumstances and shall be deemed fully earned and non-refundable to Borrower effective upon receipt by ArtAssure in its capacity as agent for Lender.

2.      **Prepayment**. The Principal Amount due and owing pursuant to this Secured Promissory Note may be prepaid by Borrower, in whole or in part, at any time or from time to time, without penalty. Borrower agrees that all cash proceeds received in respect of any sale of the Property, whether by or on behalf of Borrower or another party, will first go towards the repayment of the loan, and Borrower will undertake all necessary actions to ensure that the proceeds will be so allocated.

3.    **Security Agreement**.  This Secured Promissory Note is secured by a Security Agreement dated as of the date hereof (the "*Security Agreement*") between Borrower and Lender, to which Security Agreement reference is made as to the nature and extent of the security for this Secured Promissory Note (the "*Property*"), the rights of Lender, Borrower, and any holder of this Secured Promissory Note with respect to the Property, the acceleration of the maturity of this Secured Promissory Note and other remedies in case of an event of default under the Security Agreement.

4.    **Events of Default**.

(a)    The term "*Event of Default*" shall mean any of the events set forth in this Section 4(a):

(i)    Borrower's failure to fully and timely make any payment due hereunder;

(ii)    any representation or warranty made by Borrower herein or in the Security Agreement and/or the Loan Agreement shall be incorrect, false or misleading in any material respect;

(iii)    Borrower's default in the performance of, or breach of, any other material covenant or agreement of Borrower in this Secured Promissory Note or in the Security Agreement and/or the Loan Agreement, and such default or breach shall continue for a period of five (5) Business Days (as defined herein) after Borrower receives written notice from Lender of such breach;

(iv)    a decree or order is entered by a court having jurisdiction adjudging Borrower bankrupt or insolvent under Federal bankruptcy law, as now or hereafter constituted, or any other applicable Federal or state bankruptcy, insolvency or other similar law, and such decree or order shall continue unstayed and in effect for a period of sixty (60) days;

(v)    Borrower's commences a voluntary case under Federal bankruptcy law, as now or hereafter constituted, or any other applicable Federal or state or foreign bankruptcy, insolvency or other similar law, consents to the institution of bankruptcy or insolvency proceedings against Borrower, files a petition or answer for relief under Federal bankruptcy law or any other applicable Federal or state law or foreign law, consents to the filing of such petition or to the appointment of a receiver, liquidator, assignee, trustee or similar official for Borrower or for any substantial part of its property, makes an assignment for the benefit of creditors or admits in writing its inability to pay its debts generally as they become due;

(vi)    the Property shall cease to be subject to Lender's continuing security interest of first priority in and first lien upon all of Borrower's right, title and interest in and to the Property and the proceeds thereof, insurance proceeds and products thereof, additions and accessions thereto and any accounts receivable arising therefrom; and/or

(vii)    there shall be a levy, seizure, attachment or execution upon any of the Property.

(b)    Upon the occurrence of an Event of Default, all amounts outstanding hereunder shall, at the option of Lender, become immediately due and payable. Lender may exercise this option by written notice delivered to Borrower at Borrower's address listed above at any time prior to Borrower's cure of such Event of Default.

2



5.    **Covenants, Representations and Warranties**

(a)    As a material inducement to cause Lender to make the loan evidence by this Secured Promissory Note, Borrower represents and warrants to Lender that:

(i)    except with respect to the security interest being granted to Lender pursuant to the Security Agreement: (A) Borrower is on the date hereof and will be until this Secured Promissory Note is repaid in full, in the possession of the Property and the sole and exclusive agent for its sale, and you are not aware of any claims, liens, orders or other interests regarding the Property, which have not been disclosed to Lender; (B) if and to the extent that Borrower has provided Lender with information concerning the provenance, condition and restoration of the Property, including, without limitation, as provided in the Loan Agreement, such information is accurate, true and correct; (C) Borrower has no reason to believe the Property is not authentic or is counterfeit; (D) if the Property has been imported into the United States, the Property has been lawfully imported into the United States and/or has been lawfully and permanently exported as required by the laws of any country (including any laws or regulations applicable in the European Union) in which the Property was located; (E) required declarations upon the export and import of the Property have been properly made and any duties and taxes on the export and import of the Property have been paid; ; (F) the owner has good and valid title to the Property and you are not aware of any facts or circumstances that could give rise to any claim by any party, including without limitation, a governmental entity, alleging title to or a legal interest in the Property, which have not been disclosed to Lender; and (G) and there are no private or governmental actions, proceedings, judgments, orders or investigations threatened or pending against you anywhere in the world which could affect or which relate to the Property or your right to sell it;

(ii)    the execution and delivery of this Secured Promissory Note, the Security Agreement and the Loan Agreement by Borrower and the transactions contemplated herein and therein: (A) do not and will not violate the provisions of any agreement, instrument or other document to which Borrower is a party or by which Borrower or the Property are bound or affected, nor any order or judgment of a court or governmental agency; and (B) will not give rise to any lien, security interest, encumbrance, claim or restriction against the Property other than as granted to Lender pursuant to the Security Agreement; and

(b)    You have duly and validly executed this Agreement, no other action is necessary to authorize consummation of the contemplated transactions and no consent of any third party, including, without limitation, any governmental agency or authority, is necessary or required in connection with Borrower's execution, delivery and performance of this Secured Promissory Note, the Security Agreement and/or the Loan Agreement.

(c)    Except as otherwise expressly provided for in this Secured Promissory Note, Borrower will not, without the prior written consent of Lender, sell, offer, exchange, loan, assign, pledge, transfer, encumber or otherwise dispose of or agree to dispose of the Property unless and until all amounts payable to Lender pursuant to this Secured Promissory Note and pursuant to the Security Agreement and/or the Loan Agreement, whether due or to become due, shall have been paid in full.

3



**6. General Provisions.**

(a)    Business Days.  If any payment is scheduled to be made on a day that is not a Business Day, such payment shall be made on the immediately succeeding Business Day with the same effect as if made on the date otherwise due.  "**Business Day**" means any day other than a Saturday, Sunday or other day on which commercial banking institutions are authorized or required by law, regulation or executive order to be closed in the State of New York.

(b)    Governing Law; Service of Process.  This Secured Promissory Note shall be governed by and construed in accordance with the law of the State of New York without regard to its principles of conflicts of law.  Borrower and Lender hereby irrevocably submit to the jurisdiction of the Supreme Court of the State of New York, New York County, and, if applicable, the Federal courts of the United States of America located in the Southern District of New York, in connection with any suit, action or proceeding arising out of or relating to this Secured Promissory Note. In any such litigation, Borrower waives personal service of any summons, complaint or other process and agrees that the service thereof may be made by certified mail, return receipt requested, directed to Borrower at its address listed above.

(c)    Attorneys' Fees.  Borrower agrees to pay to Lender, upon demand all reasonable attorneys' fees, including fees incurred pursuant to any bankruptcy or insolvency proceeding, and all other reasonable costs and expenses, which may be incurred by Lender, in the enforcement of this Secured Promissory Note, the Security Agreement and/or the Loan Agreement or in any way arising out of or relating to the protection, assertion or enforcement of Lender's rights under this Secured Promissory Note, the Security Agreement and/or the Loan Agreement, whether or not suit is brought.

(d)    WAIVER OF JURY TRIAL.  BORROWER IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS SECURED PROMISSORY NOTE OF THE LOAN EVIDENCED HEREBY.

(e)    Waiver and Amendment.  No failure on the part of Lender to exercise, and no delay in exercising, any right hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise by Lender of any right hereunder preclude any other or further exercise thereof or the exercise of any other right.

(f)    Assignment.  Borrower may not assign or transfer any of his rights or obligations hereunder without the prior written consent of Lender.  Lender shall have the right to assign or transfer this Secured Promissory Note or any of Lender's rights or obligations hereunder at any time and from time to time upon written notice to Borrower, including, without limitation, Lender's rights under the Security Agreement and the Loan Agreement.

(g)    Binding Effect.  This Secured Promissory Note and the obligations and rights hereunder shall be binding upon and inure to the benefit of Borrower and Lender and their respective heirs, executors, administrators, successors and assigns.

*[Balance of page intentionally left blank; signature page to follow.]*

4



IN WITNESS WHEREOF, Borrower has caused this Secured Promissory Note to be executed, dated and delivered as of the day and year first above written.

_____   Rome nou 7th

Remko Spoelstra,
in his individual capacity

AGREED AND ACCEPTED:

THE ESTATE OF MILDRED ASH

By: _____

Asher Edelman, as Executor

5

**Schedule 1**

### Property

**Edvard Munch**
*Badende Gutter (Bathing Boys, The Lonely One)*
1904-05
Oil on canvas
57.4 x 68.5 cm
Signed lower right "E. Munch"

<u>**The Property is to be in the possession of The Estate until the Loan is repaid in full.**</u>



**Schedule 2**

### Flow of Funds

| | |
|---|---|
| Loan Amount | US$ 206,000 |
| Prepaid Interest | US$ 4,000 |
| Origination Fee | US$ 2,000 |
| Total Disbursement Amount to Borrower | US$200,000 |

<u>Schedule of payment:</u>

-$25,000 to be sent to Laura Germak's account on October 21, 2016

-$175,000 to be wired within the receipt of the Property to the Estate's premises.



## J.B. Spoelstra Beheer B.V.

**INVOICE**

2nd December 2016

SBC- Abu Dhabi
Corniche Road
Baynounah Tower 2
3rd Floor, Office No 10
Abu Dhabi, UAE

**Edvard Munch**
"Badende Gutter" or Bathing Boys
Also known as "The Lonely One"
1904/1905
Oil on canvas
Signed lower right "E. Munch"

57.4 cm x 68.5 cm



**Sale Price**                    **$ 7,000,000.00 USD**

Turfschipkade 56 - 2725 BV Zoetermeer - Tel/Fax 079-3418008 - E-mail brims127@zonnet.nl
Abn.Amro 46.29.67.093 - KvK 134126

THE ESTATE OF MILDRED ASH
135 E 15th street
New York, New York 10003

January 20, 2017

*Via Email*

Mr. Remko Spoelstra

<u>Demand for Payment on Promissory Note</u>

Dear Remko:

Reference is made to the Loan Agreement, Security Agreement and Secured Promissory Note dated as of October 21, 2016 and signed November 7th, 2016, (the "<u>Loan Agreements</u>") between The Estate of Mildred Ash ("<u>Lender</u>") and Remko Spoelstra ("<u>Borrower</u>") with respect to the borrowing of the amount of $131,000 secured by the consignment and the possession by Lender of the painting *Bathing Boys (The lonely One)* by Edvard Munch (the "Property").

Pursuant to Paragraph 4(a)(vi) of the Secured Promissory Note, an "Event of Default" is deemed to have occurred if and when the Property shall cease to be subject to Lender's continuing security interest of first priority in and first lien upon all of Borrower's right, title and interest in and to the Property and the proceeds thereof, insurance proceeds and products thereof, additions and accessions thereto and any accounts receivable arising therefrom; and/or

Lender has been recently made aware by the owner of the Property that Borrower has no further rights on Property. Therefore, an Event of Default has occurred under the Loan Agreements and as per Paragraph 4 (b) "upon the occurrence of an Event of Default, all amounts outstanding hereunder shall, at the option of Lender, become immediately due and payable."

Accordingly, demand is made for full payment of the entire balance due under the note of $131,000 representing the amount wired by Lender to Borrower ($125,000), plus the Origination Fee ($2,000) and Prepaid Interest ($4,000). If payment is not received within seven (7) business days, this note shall be turned over to our attorneys for collection, and you shall be responsible for all legal and collection costs.

This letter is written with reservation of all rights.

Very truly yours,

Asher Edelman